*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

| **Presiding: The Honorable** | GEORGE H. KING, U. S. DISTRICT JUDGE | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** (In Chambers) Order re: (1) Defendant's Motion to Strike Plaintiffs' Notice of Motions, (2) Plaintiffs' Motion to Amend Complaint, (3) Plaintiffs' Motion to Certify Subclass, and (4) Plaintiffs' Motion for Order to Show Cause Why Sanctions Should Not Be Imposed

This matter is before the Court on: (1) Defendant's Motion to Strike Plaintiffs' Notice of Motions, (2) Plaintiffs' Motion to Amend Complaint, (3) Plaintiffs' Motion to Certify Subclass, and (4) Plaintiffs' Motion for Order to Show Cause Why Sanctions Should Not Be Imposed.  We have considered the papers filed in support of and opposition to these Motions and deem this matter appropriate for resolution without oral argument.  L.R. 7-15.  The parties are familiar with the facts in the current action.  Thus, we will not repeat any facts except as necessary.

**I.    Motion to Strike**

Defendant moves to strike Plaintiffs': (1) Notice of Motion for Order to Show Cause Why Sanctions Should Not Be Imposed, (2) Notice of Motion for Leave to Amend Complaint, and (3) Notice of Motion to Certify Subclass for failure to comply with the time requirements set forth in L.R. 6.1.  Pursuant to L.R. 6-1, a notice of motion, if mailed, "shall be served not later than twenty-four (24) days before the Motion Day designated in the notice."  Defendant argues that in this case, all of the notices of motion were served on Defendant only 23 days before the motion day.

On February 11, Plaintiffs filed Amended Notices of Motion for all three of their Motions, which changed the hearing date in order to comply with L.R. 6-1.  Therefore, Defendant's Motion to Strike Plaintiffs' Notice of Motions is **DENIED** as **MOOT**.

**II.   Motion to Amend Complaint**

    **A.   Legal Standard**

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

      Under Fed. R. Civ. P. 15(a), a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). In this case, a responsive pleading has been served. Therefore, Plaintiffs may not file a third amended complaint ("TAC") without leave of court.

      "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'" *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). However, courts "need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in the litigation; or (4) is futile." *Id.* The factor of "'[u]ndue delay by itself ... is insufficient to justify denying a motion to amend.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712, 13 (9th Cir.2001) (quoting Bowles v. Reade, 198 F.3d 752, 757-58 (9th Cir.1999)). However, if a proposed amendment is futile, that is sufficient, by itself, to warrant denial of leave to amend. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991)("A district court does not err in denying leave to amend where the amendment would be futile. . .").

      **B.**      **Plaintiffs' Proposed Amendment**

      Plaintiffs seek leave to amend to add new claims for madamus, injunctive, and declaratory relief relating to their N-400 naturalization applications. The claims concern a subclass of Plaintiffs who have applied for naturalization, but who have either been denied naturalization or whose naturalization applications have not been adjudicated by United States Citizenship and Immigration Services ("USCIS"). Plaintiffs define the proposed subclass as follows:

> All persons, including derivative beneficiaries, who invested in one of the AIS Partnerships, who were granted conditional residence status under the employment based fifth preference of the Immigration and Nationality Act, section 203(b)(5), 8 U.S.C. §1153(b)(5) as alien investors, who are conditional residents for 5 years or more, and who have applied or will apply for United States naturalization by filing Form N-400 with United States Citizenship and Immigration Services (USCIS), and whose applications USCIS has either denied, refused to adjudicate, or will deny or refuse to adjudicate.

      Plaintiffs allege that Defendant has wrongfully denied or refused to adjudicate their N-400 applications on the grounds that they are not eligible for naturalization because of their status as conditional residents. Plaintiffs seek an injunction prohibiting Defendant from denying or deferring their N-400 applications on the basis that they are not permanent residents, and a declaratory judgment that all of the subclass members are eligible for naturalization, provided that all other statutory requirements are met.

      **C.**      **Subject Matter Jurisdiction**

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

Plaintiffs argue that we have subject-matter jurisdiction over the new claims, through 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1361 (mandamus jurisdiction), 5 U.S.C. § 701 (Administrative Procedure Act), 8 U.S.C. § 1447(b), and 8 U.S.C. § 1421(c). The proposed amendment seeks a declaratory judgment that all of the proposed subclass members are eligible to be naturalized, provided that all other statutory requirements are met, and to enjoin USCIS from denying or deferring their naturalizations on the basis that they are not permanent residents. Defendant argues that leave to amend is futile because we do not have subject matter jurisdiction over Plaintiffs claims.

       1.       Jurisdiction Pursuant to 8 U.S.C. §§ 1421(c), 1447(b)

On the facts as pled by Plaintiffs, we do not have jurisdiction pursuant to §§ 1447(b) and 1421(c). Section 1447(b) provides that when USCIS fails to make a determination within 120 days after the date on which the naturalization examination is conducted, the applicant may apply to the district court for a hearing on the matter. We may then either determine the matter or remand the matter, with appropriate instructions, to USCIS. Section 1421(c) provides that a person whose application is denied, after a hearing before an immigration officer, may seek review of the denial in district court. However, "applicants must first take an administrative appeal of the denial and complete. . .[USCIS's] administrative process before seeking judicial review." *United States v. Hovsepian*, 359 F.3d 1144, 1162 n.15 (9th Cir. 2004). Thus, as described by the Ninth Circuit in *Hovsepian*, "the district court has the final word concerning denial of a naturalization application in one of two ways: either the INS fails to act in a timely manner, in which case the applicant may obtain a hearing and de novo proceeding in district court; or the INS acts unfavorably, in which case the applicant may obtain a hearing and de novo review in district court." *Hovsepian*, 359 F.3d at 1162-63.

Although some Plaintiffs have filed N-400 applications, the proposed TAC does not allege that 120 days have passed since an examination, such that we have jurisdiction under § 1447(b). Some Plaintiffs have had their applications denied, but there is no allegation that they have appealed to a hearing officer as required under § 1421(c). Two Plaintiffs appear to have pending administrative appeals, but Plaintiffs do not allege where they are in the appeals process, or that the appeals are complete.

Plaintiffs nevertheless argue that their claims are ripe and they are not required to exhaust their administrative remedies because an administrative appeal would be futile. Plaintiffs contend that any appeal would be futile because it is "certain" that Defendant will deny all of their applications based on their status as conditional residents. However, Plaintiffs have failed to show that filing administrative appeals will inevitably lead to the denial of their applications. In *Chang v. U.S.*, 327 F.3d 911 (2003), the Ninth Circuit addressed the ripeness of Plaintiffs' claims regarding the adjudication of their I-829 petitions under the EB-5 program, in which Plaintiffs sought to enjoin Defendant from denying them lawful permanent residency.[1] Plaintiffs argued that Defendant established new rules for the EB-5

---

[1] Plaintiffs applied to become lawful permanent residents ("LPRs") under the EB-5 program, which grants such status to Immigrant Investors who create jobs for United States workers. *Chang*, 327

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

program through a set of "precedent decisions," which were being applied retroactively to their I-829 petitions. *Id.* We held in our May 3, 2001 Order re: Defendant's Motion to Dismiss that six Plaintiffs' claims were not ripe because their petitions had not yet been adjudicated. The Ninth Circuit reversed and held that Plaintiffs' claims were ripe. *Chang*, 327 F.3d at 921-22. The court stated that the "firm prediction" rule "eliminates the need to await an inevitable application of a regulation to a plaintiff before determining a claim to be justiciable." *Id.* at 922. The court stated that it is undisputed that Plaintiffs' petitions would be rejected if the precedent decisions are applied to them. *Id.* Therefore, the court concluded that requiring Plaintiffs to obtain a formal denial of their petitions would be futile.

However, with respect to Plaintiffs' naturalization claims, the futility doctrine is inapplicable. Plaintiffs have not shown that it is "certain" that their applications will be denied on appeal. Plaintiffs provide a January 16, 2008 hearing decision from USCIS which states that Plaintiff Pei-Shan Hsieh's naturalization application has been "prematurely denied" and placed under "pending status awaiting guidance from headquarters." However, there is no allegation or documentation showing that the administrative appeal is complete and a final denial has been issued. In *Chang*, it was undisputed that the I-829 petitions would be denied if the precedent decisions were applied. These decisions were designated as precedent pursuant to 8 C.F.R. § 103.3(c) (1999), and were binding on all employees in the administration of the EB-5 statute. *See* May 4 Order at 4. Therefore, Defendant's own precedent required them to apply the decisions, which would necessarily result in the denial of Plaintiffs' I-829 petitions. Here, Plaintiffs do not argue that Defendant is bound by any particular authority which would prevent them from granting their N-400 applications on the basis that they are conditional residents. On the contrary, Plaintiffs argue that Defendant's regulations *require* that Plaintiffs' applications be granted despite such status. Assuming, arguendo, that Hsieh's premature denial is inconsistent with USCIS regulations, the purpose of administrative appeals is to remedy such errors. Plaintiffs have pointed to no authority, like the precedent decisions, which would mandate that the appeal be denied as well. Accordingly, Plaintiffs have failed to show that any such appeal is futile. Therefore, under the facts as alleged by Plaintiffs, we do not have jurisdiction over Plaintiffs' claims pursuant to either § 1447(b) or § 1421(c).[2]

---

F.3d at 916. "EB-5 requires prospective Immigrant Investors to file 'I-526' petitions seeking approval of their submitted investment and business plans. After approval, Immigrant Investors and their dependents may enter the country as conditional LPRs. EB-5 requires the Immigrant Investors to file a second petition, an 'I-829[]'. . .after the first petition. The INS is to approve the I-829 petition, and grant unconditional LPR status, if it finds that the petitioner made no material misrepresentations in the I-526 petition and complied with the EB-5 requirements." *Id.*

[2] Plaintiffs' reliance on *Abghari, et al. v. Gonzales, et al.*, CV 05-1210-FMC (PLAx)(C.D. Cal. Feb. 15, 2006) for the proposition that we have jurisdiction is misplaced. In *Abghari*, the court had jurisdiction under § 1447(b) because more than 120 days had passed since the date of the plaintiff's naturalization interview without a determination by USCIS. *See Hovsepian*, 359 F.3d at 1151-52 (treating an "examination" under § 1447(b) as synonymous with an applicant's naturalization "interview").

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

  2.  <u>Jurisdiction Pursuant to the APA/Mandamus</u>

  Without any explanation or discussion, Plaintiffs assert in their Reply that regardless of whether there is jurisdiction under § 1447 or § 1421, we have jurisdiction under § 1361 in conjunction with the APA to compel USCIS to conduct interviews and/or adjudicate the N-400 applications in a *timely* and *lawful* manner. Accordingly, we view Plaintiffs as asserting a claim for unreasonable delay under the APA. *See* 5 U.S.C. § 706.

//

  The APA does not create subject matter jurisdiction by itself. However, in conjunction with § 1331 and/or § 1361, we have jurisdiction to compel action from a government agency where it has been unlawfully withheld or unreasonably delayed. Where the relief sought is identical under either the APA or the mandamus statute, we may analyze the issues under the APA. *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir.1997) (stating that "the Supreme Court has construed a claim seeking mandamus under the MVA [Mandamus and Venue Act], 'in essence,' as one for relief under § 706 of the APA.").

  District courts are divided on the issue of whether USCIS is required to adjudicate applications within a certain period of time, apart from the provisions of § 1447(b) and § 1421(c). Some courts have held that because USCIS has no duty to adjudicate N-400 applications within a particular time frame, there is no jurisdiction to hear an unreasonable delay claim under the APA. Other courts have concluded that USCIS has a duty to adjudicate N-400 applications within a reasonable time, such that there is jurisdiction to compel adjudication where it has been unreasonably delayed. *Compare Sidhu v. Chertoff*, No. CV 07-1188, 2008 WL 540685, *5 (E.D. Cal. Feb. 25, 2008) *and Jiang v. Chertoff*, No. CV 08-332, 2008 WL 1899245, *2 (N.D. Cal. April 28, 2008), *with Omar v. Mueller*, 501 F. Supp. 2d 636, 640 (D. N.J. 2007) and *Dairi v. Chertoff*, No. CV 07-1014, 2007 WL 3232503, *1-*2 (S.D. Cal. Nov. 1, 2007). Having considered the respective cases addressing this issue, we think the better view is that the APA and the citizenship regulations establish a duty on the part of USCIS to adjudicate N-400 applications within a reasonable time frame, such that we can properly exercise jurisdiction over a claim for unreasonable delay.

  First, we begin with the default rule that agency actions are reviewable under federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and reinforced by the enactment of the [APA], even if no statute specifically authorizes judicial review. *See ANA Int'l Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004). Even if no statute specifically provides that an agency's decisions are subject to judicial review, the Supreme Court "customarily refuse[s] to treat such silence as a denial of authority to [an] aggrieved person to seek appropriate relief in the federal courts, and this custom has been reinforced by the enactment of the Administrative Procedure Act. . ." *Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 687-88 (9th Cir. 2003) (internal citations and quotations omitted).

  "The APA authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Jiang*, 2008 WL 1899245, at *2 (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004) (quoting 5

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

U.S.C. § 702)). "'Agency action' is defined in § 551(13) to include 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Id.* The APA provides relief for a failure to act in § 706(1): "The reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed." *Id.* Thus, a remedy under the APA is limited to an order compelling an agency to act, and does not include the ability to tell an agency *how* to act. Additionally, § 555(b) of the APA states: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *Id.* However, the Supreme Court has held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton*, 542 U.S. at 64.

Two issues arise that can potentially affect the default rule that the APA applies: (1) whether there is a statute specifically stripping the court of jurisdiction, and (2) whether USCIS has a duty to process naturalization applications, such that Plaintiffs can state a claim for unreasonable delay. In this case, there is no statute specifically stripping the court of jurisdiction to hear this issue.[3] Although §§ 1447(b) and 1421(c) provide for district court review of naturalization applications in certain instances, they are not jurisdiction stripping statutes. Nor do we read these statutes as implicitly limiting our jurisdiction to review claims of undue delay. First, "[e]ven where the ultimate result is to limit judicial review. . .the narrower construction of a jurisdiction-stripping provision is favored over the broader one." *ANA*, 393 F.3d at 891. Additionally, §§ 1447(b) and 1421(c) cover claims that are functionally different than a claim for unreasonable delay, because these statutes actually allow the district court to adjudicate a naturalization application. A claim for unreasonable delay does not provide us with jurisdiction to adjudicate an application or instruct USCIS on whether to grant or deny the application. Rather, the purpose of an unreasonable delay claim is simply to order a government agency to take *some* action, whatever that action may be. Thus, a law vesting the district court with its own authority to determine the merits of a naturalization application under certain circumstances does not necessarily speak to the ability, or inability, of the court to order USCIS to take action on an application. As such, we conclude that there is no jurisdiction-stripping provision that would preclude the application of the default rule that agency actions are reviewable under the APA.

Regardless of whether there is a jurisdiction-stripping statute, some courts have found that USCIS does not have a duty to adjudicate naturalization applications within a specific period of time because there is no requirement that the Federal Bureau of Investigation ("FBI") background check be performed within a certain period of time. *See e.g. Omar*, 501 F. Supp. 2d at 640. These cases argue that because USCIS is prohibited from conducting an examination before the background check is

---

[3] We note that even in cases where an explicit jurisdiction stripping statute is present, courts have noted the importance of construing the scope of the statute. For example, in cases involving Adjustment of Status ("AOS") applications, some courts have held that they have jurisdiction under the mandamus statute and the APA to compel agency action, even though AOS adjudications are subject to a jurisdiction stripping provision found in 8 U.S.C. § 1252(a)(2)(B)(ii). *See, e.g., Dong v. Chertoff*, 513 F. Supp. 2d 1158 (N.D. Cal. 2007); *but see Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006).

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

complete, the district court has no ability to force adjudication or an interview. Specifically, 8 C.F.R. § 335.2(b) provides that the examination cannot be scheduled until the background check is complete. However, we consider this argument as going to the merits and the reasonableness of USICS's delay, rather than to our jurisdiction over the matter. At this time, we express no opinion regarding whether any alleged delay caused by the FBI, which is not a party to this action, is or is not attributable to USCIS.

Additionally, the cases that hold that we lack jurisdiction pursuant to the mandamus statute and the APA to compel the adjudication of a naturalization argue that there is no requirement that USCIS conduct an examination within a "defined time period." *See e.g. Omar*, 501 F. Supp. 2d at 640. However, the more appropriate inquiry is whether or not USCIS has a duty to adjudicate an application at all, not whether they have a duty to do so within a particular period of time. If USCIS does have a duty to adjudicate applications, it is the general unreasonable delay provision of the APA that provides that action must be taken within a reasonable amount of time.

Viewing the APA and the relevant naturalization statutes and regulations in their totality, we conclude that USCIS has a duty to adjudicate naturalization applications. First, the regulations implementing the Immigration and Nationality Act ("INA") require USCIS to give applicants a response to their petition for citizenship. 8 C.F.R. § 335.3(a) states:

> The Service officer *shall* grant the application if the applicant has complied with all requirements for naturalization under this chapter. A decision to grant or deny the application *shall* be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2. The applicant *shall* be notified that the application has been granted or denied and, if the application has been granted, of the procedures to be followed for the administration of the oath of allegiance pursuant to part 337 of this chapter.

8 C.F.R. § 335.3(a) (emphasis added).

This section clearly states that the officer *shall* grant the application if the applicant has complied with all of the requirements for naturalization. It also states that the applicant *shall* be notified that the application has been granted or denied. Thus, at some point, USCIS must make a decision whether to grant or deny the application and cannot simply choose not to adjudicate it.

Moreover, 8 C.F.R. § 335.1 requires USCIS to conduct an investigation of the applicant after he or she files an application for naturalization. *See* 8 C.F.R. § 335.1 ("Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. . .") 8 C.F.R. § 335.2(a) provides in pertinent part:

> . . .Subsequent to the filing of an application for naturalization, each applicant *shall* appear in person before a Service officer designated to conduct examinations pursuant to § 332.1 of this

Case 2:99-cv-10518-GHK-AJWX   Document 191   Filed 06/23/08   Page 8 of 11   Page ID #:929

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

chapter. The examination *shall* be uniform throughout the United States and *shall* encompass all factors relating to the applicant's eligibility for naturalization. . .

8 C.F.R. § 335.2(a)(emphasis added).

Taken in their totality, these regulations show that USCIS has a duty to adjudicate a naturalization application. As such, we have subject matter jurisdiction over a claim for unreasonable delay under the APA to compel adjudication of a naturalization application.

      3.      <u>Jurisdiction Over Plaintiffs' Proposed TAC</u>

Although we conclude that we have jurisdiction over a claim for unreasonable delay under the APA, this does not necessarily mean that we have jurisdiction over Plaintiffs' proposed claims, as currently pled. Plaintiffs seek to assert claims on behalf of proposed sub-class members who "have applied or will apply" for naturalization. We see six potential categories into which Plaintiffs can fall: (1) individuals who have not yet applied for naturalization, (2) individuals who have applied for naturalization but have not been interviewed by USCIS, (3) individuals who have applied for naturalization and no decision has been made even though they were interviewed by USCIS, (4) individuals whose naturalization applications have been denied, but who have not filed an administrative appeal, (5) individuals whose applications have been denied, and who have administrative appeals pending, and (6) individuals whose applications have been denied and whose administrative appeal is complete.

Clearly we cannot exercise jurisdiction over Plaintiffs in category one who have not yet applied for naturalization because USCIS cannot have unreasonably delayed adjudication of an application it has not yet received. Categories three through six relate to jurisdiction under § 1447(b) and § 1421(c), not the APA.[4] As discussed above, Plaintiffs have made no allegations that would give rise to jurisdiction under these sections. Accordingly, the only proposed subclass members who could potentially assert a claim are those, in category two, who have applied, but who have yet to be interviewed and have their applications adjudicated despite passage of such time as to constitute unreasonable delay. Because Plaintiffs' proposed TAC asserts claims on behalf of individuals over whom we have no jurisdiction, allowing the proposed amendment would be futile. As such, Plaintiffs' Motion to Amend Complaint is **DENIED**, without prejudice.

Plaintiffs may file an amendment limited to those individuals who have applied for naturalization but where the USCIS has unreasonably delayed adjudication of their application. However, we caution Plaintiffs that any allegations pertaining to a claim of unreasonable delay must be made consistent with their obligations under Fed. R. Civ. P. 11. We also note that nothing we have stated in this order is

---

    [4] With respect to category five, Plaintiffs do not appear to be alleging that Defendant has unreasonably delayed in the handling of any pending administrative appeals.

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

intended to state an opinion on the ultimate merits of any such claim. We take no position on what constitutes an unreasonable delay in adjudicating a naturalization application. Additionally, we express no opinion regarding whether any alleged delay caused by the FBI, which is not a party to this action, is or is not attributable to USCIS. We simply decide that, if properly pled, we can have subject matter jurisdiction to hear a claim for unreasonable delay. If Plaintiffs still wish to seek leave to amend, and can do so consistent with Rule 11, they are **ORDERED** to lodge a new proposed TAC and file a motion to amend within **thirty (30) days** hereof. Plaintiffs' failure to lodge a proposed TAC and file a motion to amend in compliance with this order will be deemed their admission that they do not seek to amend to add claims based on unreasonable delay under the APA, and no further amendments based on this theory will be allowed.

### III. Motion to Certify Subclass

Plaintiffs seek to certify the proposed subclass contained in the proposed TAC and defined above in Section II. B. In light of our denial on Plaintiffs' Motion to Amend Complaint, the proposed TAC is not the operative pleading in this action at this time. Accordingly, Plaintiffs' Motion to Certify Subclass is **DENIED**, without prejudice.

### IV. Motion for Sanctions

#### A. Legal Standard

A district court possesses the "inherent power" to issue appropriate sanctions for conduct which abuses the judicial process. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991). However, this power must be exercised with restraint and discretion. *Id.* at 44. In addition to the "inherent power" of the court, we also have statutory authority to sanction attorney misconduct pursuant to 28 U.S.C. § 1927. Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In awarding sanctions, it is well settled that we may, in our discretion, rely on our inherent power rather than on § 1927. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

When determining whether to award sanctions under either our "inherent power" or § 1927, our focus is on the bad faith and willful conduct of the litigant. *See, e.g., New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989) (sanctions under § 1927); *Fink,* 239 F.3d at 991-92 (sanctions under "inherent power). An award of sanctions is proper where a litigant willfully abuses the judicial process, engages in bad faith conduct during litigation, or files frivolous papers. *See Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1063 (9th Cir, 2007). Additionally, before imposing sanctions on an attorney, we must afford the attorney notice and an opportunity to be heard. *Id.* Finally, any sanction imposed must be "tailored" to curtail the attorney's particular misconduct. *Chambers*, 501 U.S. at 57.

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

### B. Discussion

Plaintiffs move for the issuance of an Order to Show Cause why sanctions should not be imposed against Defendant for its alleged bad faith conduct during settlement negotiations. Plaintiffs allege that Defendant failed to negotiate in good faith and changed its stated position twice during settlement. Defendant argues that the parties were engaged in a "working" settlement, and that the conduct complained of by Plaintiffs was not in bad faith. Defendants contend that the terms of the settlement were tentative and no final settlement was reached by the parties.

Although Plaintiffs have shown that Defendant changed its position during settlement, they have failed to show that Defendant engaged in bad faith, such that sanctions are warranted. Our Order regarding the October 11, 2007 Emergency Telephone Status Conference states that Defendant's counsel advised the court that Defendant was in the process of considering various options that it will present to Plaintiffs. Defendant further stated that it is presently working on scenarios that would not require Plaintiffs to produce more than $255,500. We ordered Defendant to provide Plaintiffs, in writing, its stated position by October 19, 2007.

Plaintiffs are frustrated by Defendant's change in its previously stated position and its failure to present an option to Plaintiffs that would not require them to produce more than $255,500. However, our October 11 Order shows that the parties had not yet reached a formal settlement. Defendant stated that it was working on various options and we ordered Defendant to inform Plaintiff of its final position in writing. As such, we decline to issue sanctions where it is clear that settlement discussions were ongoing, and Plaintiff has failed to show that Defendant's actions rise to the level of bad faith. Accordingly, Plaintiffs' Motion for Order to Show Cause Why Sanctions Should Not Be Imposed is **DENIED**.

### V. Conclusion

Defendant's Motion to Strike Plaintiffs' Notice of Motions is hereby **DENIED** as **MOOT**.

Plaintiffs' Motion to Amend Complaint is hereby **DENIED**, without prejudice. If Plaintiffs still wish to seek leave to amend, and can do so consistent with Rule 11, they are **ORDERED** to lodge a new proposed TAC and file a motion to amend within **thirty (30) days** hereof. Plaintiffs' failure to lodge a proposed TAC and file a motion to amend in compliance with this order will be deemed their admission that they do not seek to amend to add claims based on unreasonable delay under the APA, and no further amendments based on this theory will be allowed.

Plaintiffs' Motion to Certify Subclass is hereby **DENIED**, without prejudice.

Plaintiffs' Motion for Order to Show Cause Why Sanctions Should Not Be Imposed is hereby **DENIED**.

**IT IS SO ORDERED.**

*E-Filed*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 99-10518-GHK (AJWx) | Date | June 23, 2008 |
|---|---|---|---|
| Title | *Chang v. United States of America* | | |

| | : | |
|---|---|---|
| | Initials of Deputy Clerk | Bea |